IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY JOSEPH, **Plaintiff,** | CIVIL ACTION |
| v. | |
| PEPPERIDGE FARM INCORPORATED, **Defendant.** | NO.  22-4049 |

MEMORANDUM

HODGE, J.                                                                                                                 March 4, 2024

Anthony Joseph ("Plaintiff") filed an amended employment discrimination complaint against his former employer, Pepperidge Farm, Inc. ("Defendant") in which he asserts claims for race and age discrimination under Title VII, Section 1981, the Pennsylvania Human Relations Act ("PHRA"), and the Age Discrimination in Employment Act ("ADEA") as asserted in Counts I, III, V, VII, and VIII. (ECF No. 7.) Plaintiff also asserted claims for retaliation under Title VII (Count II), Section 1981 (Count IV), and the PHRA (Count VI), which are not the subject of this Opinion.

Before the Court is Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 10.) Plaintiff opposed the motion, and Defendant filed a reply. (ECF Nos. 13–14.) For the reasons that follow, the Court grants in part and denies in part Defendant's Motion.

I.     BACKGROUND

    A.     **Factual Background**[1]

Plaintiff is an African American/Black man who worked for Defendant at its facility in Denver, Pennsylvania for thirty-five years, until his termination on or about October 26, 2021. (ECF No. 7 at 2 ¶¶ 5, 7.) At the time of his termination, Plaintiff was fifty-nine (59) years old. (*Id.*)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Throughout his tenure with Defendant, Plaintiff brought numerous issues or complaints to the attention of Human Resources and Corporate Management at Pepperidge Farm. (*Id.* at 2–3 ¶¶ 8, 12–13.) Generally, the complaints were about Black employees being treated differently regarding discipline and promotions. (*Id.* at 2 ¶ 9.) The issues raised by Plaintiff included (1) Black employees not being permitted to wear political clothing such as Black Lives Matter masks,[2] but White employees were permitted to wear Trump election hats or Trump shirts and (2) the way Human Resource personnel and managers spoke to Black employees. (*Id.* ¶ 10.) Specifically, in mid-March 2020, Plaintiff reported having conversations with the Senior Vice President of Corporate Human Resources, Brittany Morris, and an onsite Human Resources official, Chris Martin, regarding Plaintiff's racial concerns based upon what he perceived to be issues. (*Id.* at 3 ¶ 18.)

Plaintiff also alleges that because of his race he was falsely accused of three workplace incidents, including a claim that he spread rumors about infidelity between a supervisor and subordinate on another shift. (*Id.* ¶¶ 14–15.) In addition to allegations regarding himself, Plaintiff also points to incidents involving other Black employees. For example, in September 2021, Plaintiff alleges that a White employee—Mark Hughes—sabotaged machines for other employees and yelled at another Black employee—Karen Cox. (*Id.* at 4 ¶¶ 23–27.) A month after Plaintiff raised this issue with Human Resources Representative Sherry Cook regarding Mark Hughes's actions towards Karen Cox and other employees, Plaintiff was terminated. (*Id.* ¶ 30.)

---

[2] Many of the events related to this matter occurred during the COVID-19 pandemic. Therefore, wearing masks was a common protective measure, and frequently mandatory, to reduce the spread of COVID-19.

Plaintiff was terminated on or about October 26, 2021 for committing what Defendant described as a "severe safety violation" by moving a golf cart with a forklift.[3] (*Id.* at 5 ¶¶ 33, 35.) Plaintiff disputes his termination, arguing that he was terminated "for a trivial incident for which similarly situated Caucasian and white individuals were not fired." (*Id.* ¶ 32.) Plaintiff distinguishes his conduct from a situation where a White employee, Bill Schrieber, was terminated for "lift[ing] a cart completely off the ground and [swinging] it around, [breaking] a door and [lying] about it." (*Id.* ¶ 34.) Plaintiff challenged his termination by "fill[ing] out a Pepperidge Integrity Report and complain[ing] of targeting and blatant discrimination." (*Id.* ¶ 38.) Senior Human Resources Manager Angela Pack followed up on Plaintiff's Integrity Report and found that Defendant did not terminate Plaintiff "unjustifiably because of unsafe conduct but it was because of 'code of conduct.'" (*Id.* at 6 ¶ 40.) Plaintiff alleges that there were "changing and/or pretextual reasons" for his termination because "moving a cart was [an] acceptable practice and procedure during his working for Pepperidge Farm at this plant and he did not violate any code of conduct and acted coolly and professionally at all times." (*Id.* ¶ 41.) Plaintiff alleges that after his termination that Defendant added guidance "not to move/push carts" to its training sessions. (*Id.* at 10 ¶ 72.)

The Complaint goes on to allege that four of Defendant's former employees "will testify" about the following: (1) Former Manager of Technical Support, Oliver "Tim" Conway will testify that moving carts was an acceptable practice and procedure while he was employed with Defendant (*Id.* at 6–7 ¶¶ 42–49.); (2) Gene Fleck, a supervisor at Defendant's Denver Plant who handled the

---

[3] There is an additional allegation that when Plaintiff asked why he was being terminated for a safety violation, HR representatives answered that Plaintiff was not being terminated for the safety violation but they were not at liberty to discuss the reason. In his termination letter, it stated that Plaintiff was terminated "for cause." (*See* ECF No. 7 at 5 ¶¶ 36–37.)

forklift training and safety procedures, will testify that there was no training not to move carts with the lift trucks (*Id.* at 7–8 ¶¶ 50–54.); (3) Susan Rollins, a White employee and former supervisor at the Denver Plant, will testify that employees, including herself, moved carts all the time (*Id.* at 8–9 ¶¶ 55–64.); and Karen Cox, a Black employee and former set-up operator, experienced racism while employed with Defendant and observed a difference in the application of the rules and practices for White employees and people of color. (*Id.* at 9–11 ¶¶ 65–69, 77.) Karen Cox will also testify about an instance where she had the seniority to change departments but the supervisor said "he didn't want any 'big black nigg--s in my department.'" (*Id.* at 9 ¶ 67.) To address Karen Cox's situation, Plaintiff alleges that he went to HR and then had to go to the NAACP to get the supervisor demoted. (*Id.*)

Overall, Plaintiff alleges his "termination was a result of race, color, and age discrimination, and also retaliation for his opposition activity in the workplace." (*Id.* at 12 ¶ 87.)

### B. Procedural History

Defendant partially moves to dismiss Plaintiff's Amended Complaint—specifically Counts I, III, V, VI, VII, and VIII—arguing, *inter alia*, that Plaintiff fails to state a claim for race discrimination under any statute, Plaintiff fails to state a claim for age discrimination under any statute, and Plaintiff has not exhausted his administrative remedies under the PHRA. (ECF No. 10.) Plaintiff opposes the motion. (ECF No. 13.)

## II. LEGAL STANDARD

In assessing whether Plaintiff has alleged claims upon which relief may be granted, the Court applies the familiar standard applicable to Rule 12(b)(6) motions. A plaintiff's complaint must provide merely a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This standard "'does not impose a probability requirement at the pleading stage.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Instead, "[t]he complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler*, 578 F.3d at 213).

## III.  DISCUSSION

Defendant moves to dismiss Plaintiff's race discrimination claims, arguing that Plaintiff does not sufficiently establish an inference of race discrimination. (ECF No. 10-1 at 12–22.) Further, Defendant moves to dismiss Plaintiff's age discrimination claims, arguing that Plaintiff fails to satisfy the fourth element of a prima facie case for age discrimination. (*Id.* at 22–23.) Additionally, Defendant moves to dismiss Plaintiff's PHRA claims for failure to exhaust his administrative remedies. (*Id.* at 23–24.) The Court addresses each of the Defendant's assertions below.

### A.     Race Discrimination

Plaintiff brings his claims for race discrimination pursuant to Title VII, Section 1981, and the PHRA.[4] Absent direct evidence of intentional or purposeful discrimination, these employment discrimination claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wallace v. Federated Dep't Stores, Inc.*, 214 F. App'x 142, 144 (3d Cir. 2007) (citing *Pamintuan v. Nanticoke Memorial Hospital*, 192 F.3d 378, 385 (3d Cir.1999)). "In order to establish a prima facie case, [Plaintiff] must show that (1) []he is a member of a protected class, (2) []he satisfactorily performed the duties required by [his] position, (3) []he suffered an adverse employment action, and (4) either similarly-situated non-members of the protected class were treated more favorably or the adverse job action occurred under circumstances that give rise to an inference of discrimination." *Id.* at 144–45 (citing *Sarullo v. United States Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003)). To survive a motion to dismiss, a plaintiff does not "need to establish the elements of a prima facie case;" a plaintiff needs only to "'put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 135 (3d Cir. 2014) (quoting *Fowler*, 578 F.3d at 213).

Defendant concedes that Plaintiff established the first three elements for his prima facie case. (*See* ECF No. 10-1 at 13–14.) Defendant argues that Plaintiff fails to put forth facts to support the fourth element because Plaintiff does not identify any similarly situated comparators who were

---

[4] "Generally, the substantive elements for employment discrimination claims under § 1981, Title VII, [and] the PHRA . . . are interpreted to be identical." *Angelini v. U.S. Facilities, Inc.*, No. CV 17-4133, 2018 WL 3155995, at *5 n.6 (E.D. Pa. June 27, 2018) (citation omitted); *see also Wallace v. Federated Dep't Stores, Inc.*, 214 F. App'x 142, 144 (3d Cir. 2007) (stating that Section 1981 and Title VII claims are analyzed using the same burden-shifting framework); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995) ("The [PHRA] is construed consistently with interpretations of Title VII.").

treated more favorably nor sufficiently allege facts to support an inference of race discrimination. (*Id.* at 14–22.) As such, the Court focuses on the fourth element and addresses each premise in turn.

### 1. Similarly-Situated Comparators

Defendant argues that Plaintiff fails to identify any similarly situated non-members of the protected class that engaged in a similar offense without being terminated or otherwise disciplined. (ECF 10-1 at 14–16.) Defendant argues that Bill Schrieber was a comparator because he is a White male non-supervisory employee who also moved a golf cart using a forklift. However, Bill Schrieber was terminated for this similar conduct. Defendant also asserts that Susan Rollins is not a comparator because she was a supervisor. (*Id.*)

"At the motion to dismiss stage, [the plaintiff] must allege facts sufficient to make plausible the existence of . . . similarly situated parties." *Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d 363, 375 (E.D. Pa. 2015) (quoting *Perano v. Twp. Of Tilden*, 423 Fed.Appx. 234, 238 (3d Cir. 2011)). In order for a plaintiff to present a proper comparator, they must prove "that the relevant aspects of the plaintiff's employment situation are 'nearly identical' to those of the co-workers that plaintiff alleges were treated more favorably." *Collins v. Kimberly-Clark Pa., LLC*, 247 F. Supp. 3d 571, 589 (E.D. Pa. 2017) (quoting *Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010)). "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) (citing *Lee v. Kansas City S. Ry. Co.*, 574 F. 3d 253, 260 (5th Cir. 2009)). *See also Danao*, 142 F. Supp. 3d at 375 (citing *Lee v. Valley Forge Military Academy*, No. Civ.A.08-527, 2008 WL 4899465, at *5 (E.D. Pa. Nov. 14, 2008)) ("To be similarly situated, the

other employee must hold the same position as the plaintiff and be subject to the same circumstances."); *Braddock v. SEPTA*, No. CIV.A. 13-06171, 2014 WL 6698306, at *4 (E.D. Pa. Nov. 25, 2014) (quoting *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009)) ("In workplace discrimination, relevant factors include 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'").

Here, the Court construes Plaintiff's Amended Complaint to discuss two possible similarly situated non-members of the protected class: Susan Rollins and Bill Schrieber. Rollins is not a suitable comparator because the relevant aspects of Plaintiff's employment are not "nearly identical" to Rollins. *See Collins*, 247 F. Supp. 3d at 589. Specifically, Plaintiff does not allege that he and Rollins had the same supervisor or were subject to the same standards. Plaintiff alleges that Susan Rollins was a long-time Denver Plant supervisor, who indicates that others—including herself—"moved carts all the time when it was necessary for production because of a time sensitive project." (ECF No. 7 at 8 ¶¶ 55–56.) Plaintiff generally alleges that the circumstances regarding Rollins moving carts were the same as what he did, and Plaintiff alleges that Rollins was never disciplined for the conduct. (*Id.* ¶ 56.) However, absent additional facts, the Court cannot conclude that Rollins is a suitable comparator. It has not been stated that how or the manner in which Rollins moved carts was identical to Plaintiff's conduct of using a forklift. The moving of golf carts is not the critical issue, it is the way they were moved that has been presented as a company code of conduct violation and/or safety hazard and just cause for termination.

In contrast, Schrieber appears to be a suitable comparator in that another employee who saw Plaintiff's conduct stated that Plaintiff's conduct was similar to Schrieber's. (*See id.* ¶ 34.)

However, notably, Schrieber was also terminated for his conduct. Further, Plaintiff disputes that the conduct and situations were similar. Whichever narrative the Court chooses to accept, the conclusion is the same. Schrieber is not a similarly situated non-member of the protected class who was treated *more favorably* than Plaintiff. In addition to the above, Plaintiff generally alleges that "White people pushed carts with lift trucks and were not fired for doing so at the time Plaintiff was fired." (*Id.* at 10 ¶ 73.) However, Plaintiff does not allege any specific facts regarding who these people are nor the circumstances surrounding the similar conduct.

For the reasons set forth above, Plaintiff does not sufficiently plead the existence of any similarly-situated non-members of the protected class who were treated more favorably than Plaintiff. Susan Rollins is not a suitable comparator. Further, if the Court agrees with Plaintiff that Schrieber's conduct was distinguishable from his own, then Plaintiff has still failed to identify any similarly-situated comparators who were treated more favorably.

### 2. Inference of Race Discrimination

Defendant argues that Plaintiff fails to state any non-conclusory allegations to create an inference of race discrimination. Specifically, Defendant argues that Plaintiff relies on "subjective conclusions that events otherwise lacking any apparent racial or discriminatory dimension nevertheless support his discrimination claims." (ECF No. 10 at 17.) Defendant asserts that the Amended Complaint does not plead "any non-conclusory allegations of 'similar racial discrimination of other employees'" or "any allegations concerning statements or actions by Plaintiff's supervisors or anyone else suggesting racial animus toward him." (*Id.* at 17, 19.)

Plaintiff must establish a causal nexus between his membership in a protected class and his termination. *See McGarrigle v. Cristo Rey Philadelphia High Sch.*, No. CV 22-4713, 2023 WL 2975870, at *8 (E.D. Pa. Apr. 17, 2023) (granting the defendant's motion to dismiss because

"[t]here [were] no allegations to show a causal nexus between [the plaintiff's] membership in protected classes of race and sex and her termination"). The plaintiff's "subjective belie[f] that race played a role in these employment decisions . . . is not sufficient to establish an inference of discrimination . . ." *Groeber*, 555 F. App'x at 135. "[A]n inference of discrimination can [] be supported by allegations 'of similar racial discrimination of other employees, or [allegations] of discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus.'" *Clemena v. Philadelphia Coll. of Osteopathic Med.*, No. CV 17-428, 2017 WL 3453338, at *3 (E.D. Pa. Aug. 11, 2017) (quoting *Golod v. Bank of Am. Corp.*, 403 Fed.Appx. 699, 702 n.2 (3d Cir. 2010)). The Court analyzes both prongs.

For the first prong, the Court interprets the following allegations as attempting to allege similar racial discrimination of other employees to support an inference of racial discrimination: (1) the numerous complaints Plaintiff raised about Black employees being treated differently regarding discipline, promotions, and the way HR personnel and managers spoke to Black employees (ECF No. 7 at 2 ¶ 9–10.); (2) Black employees not being permitted to "wear political clothing (e.g., Black Lives Matter masks)," but White employees were permitted "to wear Trump election hats or Trump shirts" (*Id.* ¶ 10.); and (3) the treatment of Karen Cox on two different occasions—(a) the conduct of Mark Hughes "sabotaging []other employees' equipment" and yelling at Karen Cox (*Id.* at 4 ¶¶ 23–27.) and (b) Karen Cox being denied a promotion and the supervisor's use of a racial slur when denying her move (*Id.* at 9 ¶¶ 65–67.).

For different reasons, each allegation fails to sufficiently allege an inference of racial discrimination. Moreover, the allegations lack the specificity required. Defendant argues that "Plaintiff alleges [] that at undisclosed points '[o]ver the last several years,' he raised 'numerous issues' about unspecified 'differing treatment because of race at the Denver plant,' which

10

'complaints were generally that both he and other African-American/black employees were treated differently . . . including discipline and promotions.'" (ECF No. 10 at 17 (quoting ECF No. 7 at 2 ¶¶ 8–9).) The Court agrees that this first allegation does not include any specific details about who, when, where, and why that Plaintiff needed to make complaints. Plaintiff alleges that he made the complaints on behalf of other employees, so the Court expects that he would then be able to provide more facts about those instances without further discovery. *See, e.g.*, *Petr v. Delaware Air Nat. Guard*, No. CIV.A. 94-327-SLR, 1995 WL 579634, at *3 (D. Del. Sept. 28, 1995) (finding that the plaintiff cannot establish an issue of material fact from information that the plaintiff should be aware of because the plaintiff "must be aware of the description and title of a job he held for three years").

The second allegation that Black employees could not wear Black Lives Matter apparel, but White employees could wear Trump election apparel similarly lacks sufficient specificity regarding when this different treatment took place or whether there was an official policy or communication from Defendant regarding acceptable versus unacceptable clothing or apparel. In *Frith v. Whole Foods Market, Inc.*, the First Circuit held that "the appellants' allegations simply do not support a plausible inference that Whole Foods' prohibition on employees' displaying the Black Lives Matter message in their stores was a pretext for racially discriminating against the individual employees." 38 F.4th 263, 276 (1st Cir. 2022). Similarly, here, Plaintiff has not sufficiently alleged that Defendant was prohibiting Black Lives Matter apparel yet permitting Trump election apparel as a pretext for racial discrimination, and, as such, the Court cannot draw this inference.

The allegations involving Karen Cox have similar deficiencies. "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great

11

weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 545 (3d Cir. 1992). "When determining whether such remarks allow an inference of discrimination, the Court must consider three factors: (1) relationship of the speaker to the employee within the corporate hierarchy; (2) the purpose and content of the statement; and (3) the temporal proximity of the statement to the adverse employment decision." *Danao*, 142 F. Supp. 3d at 375 (citing *Parker v. Verizon Pa., Inc.*, 309 Fed.Appx. 551, 559 (3d Cir.2009)). In *Danao*, the plaintiff properly pled an inference of discrimination due to the defendants' status as Union leaders, their derogatory comments regarding African Americans, and the alleged temporal proximity of the derogatory comments to the alleged adverse employment action. *Id.*

Here, Plaintiff provides insufficient information regarding the conduct of Mark Hughes. For example, it remains unclear whether Mark Hughes was a supervisor, when the incident between Mark Hughes and Karen Cox occurred, and what the response from Defendant was. Further, this allegation appears to support Plaintiff's retaliation claim, which is not at issue, more than it supports his race discrimination claim. Plaintiff also provides insufficient information regarding the circumstances of Karen Cox's denied promotion. The allegation does not identify the supervisor who said the racial slur and whether Plaintiff has the same supervisor, state the temporal proximity of this incident and Plaintiff's termination, nor allege whether Karen Cox was still ultimately denied the promotion. Further, even though Plaintiff alleges that he had to go to the NAACP first, the supervisor was demoted for the issue. (*See* ECF No. 7 at 9 ¶ 67.) The conduct of "some of the white employees circulat[ing] a Petition to get the discriminator's job back" is insufficient to create an inference of racial discrimination when there is no allegation connecting the conduct to Defendant's decision-making process. In general, Plaintiff asserts that Defendant

has a "zero tolerance for some, but not for all" policy (ECF No. 7 at 9 ¶ 67.); yet, Plaintiff does not assert enough facts to support his claim.

For the second prong of establishing an inference of discrimination by alleging "discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus,'" the Court does not identify any allegations that satisfy this prong. *Clemena*, 2017 WL 3453338, at *3. The closest allegations the Court identifies are Plaintiff's allegations regarding HR and management. (*See* ECF No. 7 at 3–6.) Plaintiff frequently states that the unusual reactions of HR and management regarding his termination were "telling." (*See* ECF No. 13 at 9.) However, the Court does not find that using specific wording for a termination or non-verbal body language is sufficient to suggest racial animus towards Plaintiff. Additionally, Plaintiff does not allege which of Defendant's employees were his supervisors or even, as Defendant points out, "which of Defendant's employees . . . made the decision to terminate his employment." (ECF No. 10 at 19.) Further, though Plaintiff expresses dissatisfaction with how HR and management handled issues, Plaintiff alleges the opposite of direct racial animus and instead has several allegations demonstrating that HR and management were responsive and spoke with Plaintiff about his concerns. (*See* ECF No. 7 at 2–3 ¶¶ 8–13, 17–19.)

In addition to the above, Plaintiff argues in his response in opposition that his discrimination claims should be permitted to proceed to discovery because "[t]he Motion to Dismiss [standard] is a liberal one and is not meant to bar possible legitimate theories of recovery in a discrimination case where facts could show possible different theories of recovery." (ECF No. 13 at 11.) Plaintiff further argues that "there may be overlapping illegal reasons why Plaintiff was illegally fired," and as such, Plaintiff's claims should continue onto discovery. (*Id.*) However, even though the pleading standard is a liberal one, Plaintiff is still required to establish facts to support

13

his allegations. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). At this juncture, Plaintiff has failed to sufficiently allege facts to support his race discrimination claims.

Overall, the Court agrees with Defendant that Plaintiff does not sufficiently plead allegations to establish an inference of race discrimination, which is fatal to his race discrimination claims. Therefore, Plaintiff has failed to sufficiently allege a race discrimination claim under any statute, and the Court grants Defendant's motion to dismiss Counts I, III, and V. However, Plaintiff's race discrimination claims are dismissed without prejudice to permit a final opportunity for Plaintiff to state a claim of race discrimination that meets federal pleading standards if such factual evidence exists, not to invite a frivolous filing.

### B. Age Discrimination

Plaintiff fails to allege an age discrimination claim under any statute.[5] In *Hill v. Borough of Kutztown*, the Third Circuit set forth the basic elements of an ADEA claim as follows: "To state a claim for age discrimination under the ADEA, a plaintiff must allege that (1) he is over forty [sic], (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." 455 F.3d 225, 247 (3d Cir. 2006). Defendant argues that Plaintiff's Counts VII (ADEA) and VIII (PHRA) should be dismissed because Plaintiff has failed to satisfy the fourth element. (ECF No. 10-1 at 22–23.) To sufficiently and plausibly satisfy the fourth element, Plaintiff must either: "(1) allege that similarly situated employees who were not members of the

---

[5] The same legal standard applies to both the ADEA and the PHRA, and therefore, it is proper to address them collectively. *See Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005) (citing *Glanzman v. Metropolitan Management Corp.,* 391 F.3d 506, 509 n.2 (3d Cir. 2004)).

14

same protected class were treated more favorably under similar circumstances, or (2) allege facts that otherwise show a causal nexus between the employees' membership in a protected class and the adverse employment action." *Drummer v. Trustees of Univ. of Pa.*, 286 F. Supp. 3d 674, 681 (E.D. Pa. 2007); *see also Holyk v. Scranton Counseling Ctr.*, Civil Action No. 3:17-0435, 2018 WL 585611, at *5 (M.D. Pa. Jan. 29, 2018) (same).

The Court agrees with Defendant that Plaintiff does not allege any factual allegations to satisfy the fourth element of an age discrimination claim. Plaintiff only alleges that "his age played a role in his treatment" and that he was terminated "or was treated differently" because of it. (ECF No. 7 at 12 ¶¶ 86–87, 134–35, 140–41.) Further, Plaintiff alleges that Susan Rollins, a former supervisor at Defendant's Denver plant, will testify that "[s]he attributes Plaintiff's firing possibly to a pattern of trying to get rid of older employees." (*Id.* at 9 ¶ 62.) However, Plaintiff does not provide additional allegations regarding any such pattern nor allegations regarding younger similarly situated employees being treated more favorably. As such, Plaintiff has not alleged sufficient facts to establish an inference of age discrimination, which is fatal to his age discrimination claims altogether. Therefore, Plaintiff has failed to sufficiently allege an age discrimination claim under any statute, and the Court grants Defendant's motion to dismiss Counts VII and VIII. Plaintiff's age discrimination claims are dismissed with prejudice.

### C. Exhaustion of PHRA Claims

Defendant argues that the Court should dismiss Plaintiff's PHRA claims in Counts V, VI, and VIII because Plaintiff failed to exhaust his administrative remedies. (*See* ECF No. 10 at 23.) All PHRA claims must first be brought to "an administrative agency, the PHRC, which has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter." *Burgh v. Borough Council of Borough of Montrose*, 751 F.3d 465, 471 (3d

Cir. 2001). Because the PHRC has exclusive jurisdiction during this time, "[a] complainant may not file an action in court for a period of one year." *Id.* However, after this one-year period has elapsed, the complainant may file a court action "regardless of whether or not he has received a letter from the PHRC." *Id.*

Defendant is correct that Plaintiff prematurely filed his complaint. In his Amended Complaint, Plaintiff acknowledges that he "cross-filed this matter under the Pennsylvania Human Relations Act, 43 Pa.C.S. § 951, et seq., with the Pennsylvania Human Relations Commission and it has not been one year since that cross-filing." (ECF No. 7 at 1 ¶ 1.) However, at this point, time has cured the defect and the one-year deadline has long since passed. Therefore, Defendant's exhaustion argument is moot, and the Court partially denies the motion to dismiss on these grounds. *See, e.g.*, *Wardlaw v. City of Philadelphia*, Civil No. 09-3981, 2011 WL 1044936, at *3 (E.D. Pa. Mar. 21, 2011) ("Even if the second PHRC charge was not within the scope of Wardlaw's first PHRC charge, and thus filed prematurely by inclusion in the Second Amended Complaint, that defect has been cured by the passage of time. Courts in this Circuit have adopted a flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the one-year deadline expires during court proceedings."); *Johnson v. Chase Home Finance*, 309 F. Supp. 2d 667, 670 (E.D. Pa. 2004) ("Because plaintiff's case has been dismissed by the PHRC, she is now entitled to bring suit in federal court notwithstanding the fact that the case was dismissed by the PHRC after she filed the instant complaint. The issue of exhaustion on the grounds that the PHRC retains exclusive jurisdiction over cases filed under the PHRA for a period of one year is moot due to the PHRC's dismissal of plaintiff's complaint.").

## IV. CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss (ECF No. 10) is granted in part and denied in part. An appropriate order consistent with this opinion follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**